**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on March 14, 2007)
BID PROTEST

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC APRIL 4, 2007

BANNUM, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DISMAS CHARITIES, INC.,

Defendant-Intervenor.

No. 07-109C
Judge Allegra

**DISMAS CHARITIES, INC.'S RESPONSE TO BANNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Dismas Charities, Inc.*

*Of Counsel:*

Daniel S. Herzfeld
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: March 14, 2007

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

NATURE OF THE CASE ..... 1

QUESTIONS PRESENTED ..... 2

STATEMENT OF THE FACTS AND COUNTER-STATEMENT OF THE FACTS ..... 3

A. Bannum [redacted] The Solicitation, Evaluation, and Award ..... 3

B. Bannum's Bid Protest At The Government Accountability Office ..... 5

C. Bannum's First Bid Protest In This Court ..... 5

D. BOP's Re-evaluation Of The Technical/Management Proposals ..... 5

1. Discussion Notice #1 And Bannum's Response ..... 5

2. BOP Continues To Allow Bannum To Compete ..... 6

3. Discussion Notice #2 And Bannum's Response ..... 7

4. BOP's Evaluation And Requests For Final Proposal Revisions ..... 8

5. BOP Eliminates Bannum From The Competition ..... 9

6. Bannum's Agency Protest Of Its Elimination From The Competitive Range ..... 9

ARGUMENT ..... 9

I. STANDARD OF REVIEW ..... 9

II. BANNUM HAS FAILED TO PROVE THAT BOP ERRED, ACTED ILLEGALLY, OR ACTED IN BAD FAITH ..... 11

A. Bannum [redacted] And BOP Reasonably Eliminated Bannum From The Competitive Range ..... 11

1. Under The Solicitation, Bannum Was Not Entitled To Additional Discussions Concerning [redacted] Following Its Elimination ..... 13

2. BOP Was Not Required To Mitigate Any Competitive Advantage ..... 14

3. Bannum Received More Than Equal Treatment From BOP ..... 16

B. Bannum Has Not Shown That BOP Had Any Specific Intent To Injure Bannum ..... 17

C. Dismas Properly Provided All Of The Right To Use Documentation Required By The RFP, No Opposition Exists From The Property Owners' Association To Dismas's Use Of The Facility As A CCC, And No Basis Exists For Dismas's Disqualification ..... 18

1. Dismas Provided The Documentation Required By The RFP Concerning Its Right To Use ..... 19

2. No Opposition Exists From The ENCPPOA To Dismas's Use Of The Facility As A CCC ..... 20

3. No Basis Exists For Dismas's Disqualification ..... 22

III. BANNUM HAS FAILED TO SHOW THAT IT SHOULD BE AWARDED INJUNCTIVE RELIEF ..... 22

A. Bannum Will Suffer No Irreparable Harm Should The Court Not Remand This Case ..... 23

B. The Balance Of Hardships Favors Dismas And BOP ..... 24

C. Injunctive Relief Will Not Serve The Public's Interest In Proper Enforcement Of Procurement Laws ..... 24

CONCLUSION AND RELIEF REQUESTED ..... 25

# TABLE OF AUTHORITIES

Cases

*Bannum, Inc. v. United States*,
56 Fed. Cl. 453 (2003) .......... 10, 11

*Bannum, Inc. v. United States*,
404 F.3d 1346 (Fed. Cir. 2005) .......... 10

*Beta Analytics Int'l v. United States*,
69 Fed. Cl. 431 (2005) .......... 14, 15

*Cardinal Maint. Serv., Inc. v. United States*,
63 Fed. Cl. 98 (2004) .......... 23

*Ellsworth Assocs., Inc. v. United States*,
45 Fed. Cl. 388 (1999) .......... 24

*Galen Medical Assocs., Inc. v. United States*,
369 F.3d 1324 (Fed. Cir. 2004) .......... 17

*Impresa Costruzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001) .......... 9, 10

*Info. Sciences Corp. v. United States*,
73 Fed. Cl. 70 (2006) .......... 22, 23, 24

*Librach v. United States*,
147 Ct. Cl. 605 (1959) .......... 18

*L.P. Consulting Group, Inc. v. United States*,
66 Fed. Cl. 238 (2005) .......... 10, 17

*ManTech Telecomm. & Info. Sys. v. United States*,
49 Fed. Cl. 57 (2001), *aff'd*, 30 Fed. Appx. 995 (Fed. Cir. 2002) (unpub.) .......... 16

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 10

*OTI America, Inc. v. United States*,
68 Fed. Cl. 646 (2005) .......... 23

*Overstreet Elec. Co., Inc. v. United States*,
47 Fed. Cl. 728 (2000) .......... 23

*PGBA, LLC v. United States*,

389 F.3d 1219 (Fed. Cir. 2004) ........ 10, 23, 24

*SAI Indus. v. United States*,
60 Fed. Cl. 731 (2004) ........ 23

*Sys. Plus, Inc. v. United States*,
69 Fed. Cl. 757 (2006) ........ 22

*Tecom, Inc. v. United States*,
66 Fed. Cl. 736 (2005) ........ 18

*Textron Inc. v. United States*,
74 Fed. Cl. 11 (2006) ........ 15

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998) ........ 10

Comptroller General Decisions

*Bannum, Inc.*,
B-291847, 2003 CPD ¶ 74 ........ 11

*Computer Sciences Corp.*,
B-190632, 79-2 CPD ¶ 102 ........ 15

*Ford Aerospace Corp.*,
B-239676, 91-1 CPD ¶ 260 ........ 15

*Kaufman Lasman Associates, Inc.*,
B-229917, 88-2 CPD ¶ 381 ........ 15

*Smith & Wesson*,
B-232681.2, B-232681.3, 89-1 CPD ¶ 134 ........ 15

Statutes and Regulations

28 U.S.C. § 1491 ........ 10

4 C.F.R. § 21.5 ........ 21

48 C.F.R. § 15.306 ........ 11, 14

48 C.F.R. § 15.307 ........ 14

48 C.F.R. § 15.507 .......... 16

Federal Rules

Fed. R. Evid. 403 .......... 21

Fed. R. Evid. 802 .......... 21

Rules of the United States Court of Federal Claims

Rule 52.1 .......... 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on March 14, 2007)
BID PROTEST

AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC APRIL 4, 2007

BANNUM, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DISMAS CHARITIES, INC.,

Defendant-Intervenor.

No. 07-109C
Judge Allegra

**DISMAS CHARITIES, INC.'S RESPONSE TO BANNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to RCFC 52.1, Defendant-Intervenor Dismas Charities, Inc. ("Dismas") respectfully cross-moves this Court for judgment on the administrative record and responds to Plaintiff Bannum, Inc.'s ("Bannum") motion for summary judgment [*sic*] on the administrative record ("Bannum's Motion"). For the reasons set forth below and in the Administrative Record ("AR"), Bannum's Motion should be denied and Dismas's and the Government's cross-motions should be granted.

**NATURE OF THE CASE**

The AR conclusively shows that the Defendant, acting through the Department of Justice ("DOJ') Federal Bureau of Prisons ("BOP"), in the course of taking voluntary corrective action, acted properly, legally, and within its discretion by eliminating Bannum from the competition for

award of Contract No. DJB200824 under Request for Proposals No. 200-0880-SC ("RFP" or the "Solicitation"). The procurement at issue involves Community Corrections Center ("CCC") services for Federal offenders held under the authority of United States statutes in Orlando, Florida. The AR in this case establishes that, even after two rounds of discussions during the voluntary corrective action, and more than 30 days after Bannum knew of the pending voluntary corrective action, Bannum [redacted] complied with the RFP. In addition, BOP properly evaluated Dismas's proposed facility because Dismas included in its proposal all of the required documentation concerning Dismas's right to use its proposed facility. Therefore, Bannum is not entitled to its requested relief of "stopping" the BOP personnel who participated in the corrective action, enjoining the BOP from making an award until "discussions are reopened inclusive of Bannum," and enjoining BOP from handling this procurement and ordering the procurement "be handled by independent persons in the Department of Justice."

## QUESTIONS PRESENTED

1. Whether, in the course of its voluntary corrective action, BOP properly eliminated Bannum from the [redacted]

2. Whether Dismas submitted the proper documentation, as required by the RFP, regarding its right to use and addressing local concerns associated with its proposed facility.

## STATEMENT OF THE FACTS AND COUNTER-STATEMENT OF THE FACTS

### A. Bannum [redacted]

BOP issued the Solicitation on November 30, 2005 as a total set-aside for small businesses. AR 1. The Solicitation called for the submission of initial offers on January 30, 2006, sixty (60) days after the issuance of the Solicitation. AR 4. As reflected in the original Solicitation, BOP sought performance to commence on August 1, 2006. AR 6. As a result of Bannum's agency protest of the small business set-aside, based on the large business status of one of the offerors, BOP issued Amendment No. 1 on December 19, 2005 canceling the small business set-aside. AR 147-48. On December 20, 2005, Bannum requested a 60-day extension of the closing date for initial proposals. AR 1474-75. On December 22, 2005, after considering Bannum's request, and determining that a 22-day extension would suffice, BOP granted a 30-day extension and issued Amendment No. 2 to the Solicitation extending the closing date for the receipt of proposals to March 1, 2006. AR 149.

On February 9, 2006, [redacted] by March 1, 2006, Bannum requested a further, 30-day extension. AR 1487-88. In that extension request, Bannum [redacted]" AR 1487. After carefully considering this request from Bannum, on February 10, 2006, BOP denied the extension, noting that the 73-day time period for accepting proposals (from December 22, 2005 to March 1, 2006), was 13 days longer than the standard 60 days normally allowed for such procurements. AR 1492.

On March 1, 2006, BOP received proposals from four offerors, including Dismas and Bannum. On May 3, 2006, BOP eliminated Bannum from the competition for [redacted] AR 1659. On the same day BOP eliminated it, Bannum protested its elimination from the competition, stating that [redacted] AR 434-35. On May 12, 2006, BOP elected to re-instate Bannum. AR 436.

On June 23, 2006, BOP sent all offerors a letter introducing Amendment No. 3 to the Solicitation, containing a new Department of Labor Wage Determination. AR 443. The letter requested nothing from offerors other than revised pricing proposals, if required by the new Wage Determination. AR 443 ("If the revised DOL Wage Determination affects your proposal, you have an opportunity to revisit your pricing schedule. Keep in mind, the amendment is specific to pricing only, and is not a form of written negotiations to open and conduct discussions."). On June 28, 2006, in response to this letter, Bannum submitted [redacted] AR 451. BOP's July 5, 2006 letter to Bannum made clear that [redacted] AR 645. BOP explained that [redacted] AR 645.

On July 5, 2006, BOP awarded the Contract to Dismas. AR 395.

**B. Bannum's Bid Protest At The Government Accountability Office**

On July 14, 2006, Bannum protested the award to the Government Accountability Office ("GAO"). AR 1083-95. Bannum's protest claimed, among other things, that discussions were required in this procurement, that Dismas's proposal had been deficient, and that BOP had conducted the procurement with "bad faith" towards Bannum. AR 1083-95. GAO denied Bannum's bid protest on October 16, 2006. AR 1269-79.

**C. Bannum's First Bid Protest In This Court**

On November 1, 2006, Bannum filed a post-award bid protest (No. 06-744C) in this Court. AR 2767-3119. On December 11, 2006, BOP decided to take voluntary corrective action to correct a minor alleged evaluation error, and informed all offerors, including Bannum, that BOP would "re-evaluate the Technical/Management Proposals." AR 4270. The letter stated that all offerors would be given an "opportunity to address, at a minimum, any deficiencies and significant weaknesses by way of written discussions." AR 4270. The following day, December 12, 2006, BOP filed a motion to dismiss the bid protest, stating that its voluntary corrective action mooted the protest. AR 4053-94. In that motion, BOP outlined its voluntary corrective action as a re-evaluation of the proposals, to include "conducting discussions with all offerors regarding the procurement." AR 4054. BOP did not, nor was it required to, admit or concede the validity of any of Bannum's claims. AR 4058. This Court granted BOP's motion to dismiss on December 20, 2006. AR 4184.

**D. BOP's Re-evaluation Of The Technical/Management Proposals**

**1. Discussion Notice #1 And Bannum's Response**

On December 28, 2006, in Discussion Notice #1, BOP informed Bannum that it had re-evaluated Bannum's technical proposal, based on Bannum's [redacted]

[redacted] AR 4380. BOP sought several clarifications from Bannum, and requested a response from Bannum by January 8, 2007. AR 4380.

Bannum responded on January 8, 2007, blaming BOP for, among other things, [redacted] AR 4386. In its January 8, 2007 letter, Bannum referred to [redacted] but failed to state [redacted] AR 4386-88. Bannum further claimed that [redacted] AR 4386. Rather than submit such documentation, however, Bannum stated [redacted] *See* AR 4386-88. Bannum did not request an extension to respond to BOP's January 8, 2007 deadline for the submission of clarifications. AR 4386-88; 4215.

### 2. BOP Continues To Allow Bannum To Compete

On January 10, 2007, BOP documented its evaluation of the submittals received in response to Discussion Notice #1. AR 4846. The evaluation panel stated that because Bannum's response indicated that [redacted] Bannum did not meet the requirements of the Solicitation. AR 4846. Nonetheless, on January 16, 2007, BOP eased the Solicitation's requirements for Bannum's apparent benefit and determined to "allow Bannum, Inc. an opportunity to continue to be part of the evaluation." AR 4214. In its January 16, 2007 memorandum, BOP noted that in its response to Discussion Notice #1, "Bannum had indicated

[redacted] AR 4215. BOP also noted that normally [redacted] Bannum would have been eliminated from the competitive range at this point, but that "given the extended time period between the award and the re-evaluation," BOP determined it appropriate to "allow Bannum's proposal to remain under consideration and for Bannum to be able to respond to a second round of discussions." AR 4215. BOP observed that as of January 16, 2007, over 30 days had elapsed since BOP had first notified Bannum (on December 11, 2006) that BOP intended to re-evaluate and open discussions, more than enough time for Bannum to [redacted] AR 4215.

### 3. Discussion Notice #2 And Bannum's Response

On January 18, 2007, BOP sent Bannum Discussion Notice #2, explaining that it had evaluated Bannum's responses to Discussion Notice #1 and had identified several deficiencies, including that [redacted] AR 4406-07. BOP requested Bannum's response to Discussion Notice #2 by January 26, 2007. Bannum responded on January 26, 2007, providing [redacted] AR 4415. [redacted] AR 4414-16. [redacted] AR 4437. [redacted]

[redacted] AR 4415.

Eleven days later, on February 6, 2007, BOP finally received from Bannum [redacted] AR 4784. BOP noted that Bannum's response to Discussion Notice #2 had been due on January 26, 2007, and that the offerors' responses to the Discussion Notices had been evaluated on January 30, 2007. Accordingly, BOP determined it would not consider [redacted] AR 4784.

#### 4. BOP's Evaluation And Requests For Final Proposal Revisions

On January 30, 2007, BOP performed and documented its evaluation of the offerors' responses to the Discussion Notices. AR 4230. BOP here stated that both Dismas and another offeror, [redacted], had submitted responses that were acceptable. AR 4230. As for Bannum, BOP's evaluation found that [redacted] AR 4230. On February 6, 2007, BOP sent requests for Final Proposal Revisions ("FPR") to Dismas and [redacted]. AR 4234-35 and 4251-52. FPRs from Dismas and [redacted] were due to BOP by February 16, 2007. AR 4235 and 4252.

### 5. BOP Eliminates Bannum From The Competition

Also on February 6, 2007, BOP informed Bannum that it had been eliminated from the competitive range. AR 4788-89. BOP found Bannum's proposal, including its responses to the two Discussion Notices, unacceptable. AR 4788. As BOP stated, after two rounds of discussions, Bannum [redacted] AR 4788.

### 6. Bannum's Agency Protest Of Its Elimination From The Competitive Range

On February 7, 2007, Bannum filed an agency protest of its elimination from the competitive range. AR 4359-70. Bannum claimed that BOP had improperly evaluated [redacted] the BOP's procurement error in issuing Dismas an award based on a non-compliant offer." AR 4359. Before BOP could render a decision on the agency protest, Bannum filed the instant action in this Court on February 14, 2007, on the same basis as its agency protest. On February 16, 2007, BOP informed Bannum that it had dismissed the agency protest pursuant to Section L.5(k) of the RFP, which allowed BOP to dismiss or stay an agency protest "if a protest on the same or similar basis is filed with a protest forum outside the Department of Justice." AR 4373.

## ARGUMENT

## I. STANDARD OF REVIEW

To succeed on the merits, a protester must prove "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Costruzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332

(Fed. Cir. 2001); *see also* 28 U.S.C. § 1491(b)(4) (incorporating Administrative Procedures Act review standards at 5 U.S.C. § 706). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Furthermore, an "explicit explanation [of the agency's decision] is not necessary . . . where the agency's decisional path is reasonably discernible." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998). In addition to proving that an agency acted unreasonably or in violation of law or regulation, a protester also must prove that the agency's action prejudiced the protester. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357-58 (Fed. Cir. 2005) (concluding that, notwithstanding a violation of regulation, Bannum had failed to show any prejudice).

In addition, because Bannum has essentially argued that BOP acted in bad faith, Bannum is required to prove that BOP acted with the specific intent to injure Bannum. *L.P. Consulting Group, Inc. v. United States*, 66 Fed. Cl. 238, 243-44 (2005).

To receive the extraordinary permanent injunctive relief requested, Bannum must prove (1) the merits the of its case, including prejudice; (2) it will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of the hardships favors Bannum instead of Dismas and BOP in the grant of injunctive relief; and (4) that it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

## II. BANNUM HAS FAILED TO PROVE THAT BOP ERRED, ACTED ILLEGALLY, OR IN BAD FAITH

### A. Bannum [redacted] BOP Reasonably Eliminated Bannum From The Competitive Range

As noted above, 15 months after BOP issued the Solicitation *Bannum* [redacted] *meets the Solicitation's requirements.* Bannum is clearly not [redacted] which is not BOP's responsibility. BOP was well within its discretion to eliminate Bannum from the competition. *See* 48 C.F.R. § 15.306(d)(5) ("If, after discussions have begun, an offeror originally in the competitive range is no longer considered to be among the most highly rated offerors considered for award, that offeror may be eliminated from the competitive range whether or not all material aspects of the proposal have been discussed, or whether or not the offeror has been afforded an opportunity to submit a proposal revision . . . ."); *cf. also Bannum, Inc.*, B-291847, 2003 CPD ¶ 74, at 3 ("Despite the clearly stated requirements, and despite being told in each of two rounds of discussions . . . that its proposal did not meet the requirements, Bannum never submitted a compliant proposal.").

In fact, as discussed above, the AR clearly shows that Bannum [redacted] in compliance with the requirements of the Solicitation. Despite this, BOP regularly allowed Bannum to continue in the competition notwithstanding Bannum's ongoing failure to provide [redacted] met the Solicitation's requirements.

In Bannum's Motion at 16, it asserts that Bannum's [redacted][1] In this regard, Bannum's prior protests to the GAO and to this Court were

---

[1] Bannum also appears to assert that BOP was required to continue using Bannum's incumbent facility in Orlando [redacted] during the pendency of the procurement. Judge Hewitt heard and rejected a similar argument from Bannum regarding another facility in another procurement, in which Bannum similarly was on the verge of losing its facility. *See Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 457 (2003) ("Issuing an injunction extending

premised on this assertion that Bannum [redacted] However, it now appears that Bannum [redacted] at the time it first sought relief in this Court. Ultimately, when BOP re-opened the competition to take voluntary corrective action, [redacted]

As soon as it received notice on December 11, 2006 that BOP intended to take corrective action, Bannum knew that [redacted], and therefore had more than 30 days [redacted]. However, notwithstanding three bites at the apple, Bannum still [redacted] At the time BOP proposed its voluntary corrective action, Bannum had nothing but praise for the decision, lauding it as the "appropriate and required remedy." AR 4138. Because Bannum does not agree with the result of BOP's voluntary corrective action, Bannum now complains that BOP's voluntary corrective action did not sufficiently favor Bannum.

On the contrary, BOP has given Bannum every opportunity, and then some, [redacted] the required documentation. Bannum simply did not comply, just as it has been unable to [redacted] in a timely manner throughout this procurement (always requesting just a little additional time to comply with the Solicitation). Bannum was entitled neither to continue in the competition nor to any more favorable treatment than it already received from BOP.

---

plaintiff's contract in these circumstances could be worse than an exercise in futility. An injunction would not only intrude upon defendant's decision-making process, but could also require defendant to enter into a contract with a party unable to perform.").

### 1. Under The Solicitation, Bannum Was Not Entitled To Additional Discussions Concerning [redacted] Following Its Elimination

Bannum's elimination did not violate the Solicitation. Bannum argues that the Solicitation entitled Bannum [redacted], even after discussions had concluded, [redacted]. Bannum's Motion at 27. Bannum provides no support for its position. The pertinent portion of the Solicitation [redacted]

[redacted]

[redacted]

First, this section of the RFP imposes a requirement o[redacted]; it does not impose a requirement on BOP. In particular, it requires that [redacted] On January 26, 2007, Bannum submitted its response to Discussion Notice #2, in which Bannum proposed [redacted] Thus, the Solicitation's requirements regarding [redacted] were followed.

Second, by its own admission, Bannum failed to comply with the Solicitation by not [redacted] As noted above, Bannum provided [redacted] until after the response date for Discussion

Notice #2 had passed. Bannum's Motion at 29. Bannum submitted [redacted] Bannum provided [redacted]

Finally, Bannum's elimination from the competitive range excluded it from any "entitlement" to submit an FPR. "At the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision." 48 C.F.R. § 15.307(b); *see also id.* § 15.306(d)(5). Because Bannum had been eliminated and was no longer in the competitive range, it had no "right" to submit an FPR.

### 2. BOP Was Not Required To Mitigate Any Competitive Advantage

Contrary to Bannum's assertions, BOP was not required to mitigate any supposed competitive advantage. The first case from this forum Bannum cites to support its proposition that an agency must mitigate an offeror's "unfair competitive advantage" (Bannum's Motion at 27) is inapposite. In *Beta Analytics*, the Court was "hesitant to require any particular methodology" in an agency's proposed corrective action. *Beta Analytics Int'l v. United States*, 69 Fed. Cl. 431, 434 (2005). Moreover, in *Beta Analytics*, the corrective action resulted from a procurement that the Court had found to be arbitrary. *Beta Analytics*, 69 Fed, Cl. at 432. In this case, BOP has not admitted to any error, and the Court has not found the procurement to have been arbitrary.[2] Determining how an agency implements and discharges a voluntary corrective action, especially when it has not been found to have committed any error, is "the sort of determination that is normally left to the expertise of agency procurement personnel, as it

---

[2] In its Motion to Dismiss in No. 06-744C, BOP stated: "Importantly, in undertaking the described voluntary remedial action, which moots Bannum's complaint, the Government in no way admits nor concedes the validity of any of the allegations, factual assertions, or alleged errors contained in Bannum's various pleadings." AR 4058.

involves wisdom and knowledge beyond the normal ken of courts." *Beta Analytics*, 69 Fed. Cl. at 434.

In the other cases and decisions Bannum cites for its proposition on this point, no neutralization of competitive advantage was required where the protester was disadvantaged through its own actions or where there was "no finding or admission of direct prejudice as a result of agency action." *Textron Inc. v. United States*, 74 Fed. Cl. 11, 26 (2006) (protester was allowed to remain in the competition "pursuant to a voluntary correction, not in response to a finding of improper action," and any injury to the protester occurred due to its own actions or the actions of its teaming partner, and not due to any agency action); *Ford Aerospace Corp.*, B-239676, 91-1 CPD ¶ 260, at 3 (direct prejudice consisted of the agency imposition of a $13.1 million penalty on all offerors other than the awardee in a re-solicitation); *Smith & Wesson*, B-232681.2, B-232681.3, 89-1 CPD ¶ 134, at 8-10 (direct prejudice consisted of the agency's intention to add costs to all offerors' proposals except for the incumbent's proposal in a re-solicitation); *Kaufman Lasman Associates, Inc.*, B-229917, 88-2 CPD ¶ 381, at 4 (incumbent's unfair competitive advantage resulted from the agency's improper award based on cost factors not included in the solicitation); *Computer Sciences Corp.*, B-190632, 79-2 CPD ¶ 102, at 8-10 (agency effectively allowed all competitors except for the protester to change their price proposals in the course of re-opening negotiations).

In this case, the agency has not been found to have committed, and certainly has not admitted, any error that would be even indirectly prejudicial to Bannum, much less directly prejudicial. More importantly, any disadvantage to Bannum was not a result of any agency action, but solely as a result of Bannum's [redacted]

Furthermore, as to competitive advantage, the Federal Acquisition Regulation ("FAR") only requires that all offerors be provided (1) similar information as was received by unsuccessful offerors as part of a debriefing, and (2) non-proprietary information provided to the original offerors. *See* 48 C.F.R. § 15.507(b) & (c); *cf. also ManTech Telecomm. & Info. Sys. v. United States*, 49 Fed. Cl. 57, 77-78 (2001), *aff'd*, 30 Fed. Appx. 995 (Fed. Cir. 2002) (unpub.). For example, under the FAR, Dismas was entitled to receive similar information about all competitors (such as price) that each of those offerors received regarding Dismas's proposal from any BOP debriefing. *See ManTech*, 49 Fed. Cl. at 78 ("[W]hen an unsuccessful offeror lawfully obtains source selection information, such as a competitor's prices and technical scores, and the agency subsequently properly reopens negotiations, the agency may disclose similar information to all the competitors to eliminate any competitive advantage.") (citation and quotation omitted). Thus, if anything, Dismas has been at a competitive disadvantage because all other offerors have had Dismas's pricing information, but Dismas does not have the same information from its competitors.

**3. Bannum Received More Than Equal Treatment From BOP**

BOP's voluntary corrective action, proposed by BOP as a result of a minor alleged error in the course of the original procurement decision, was more than fair to Bannum, an offeror that had more than enough time and opportunities [redacted] comply with the Solicitation's requirements. Throughout this procurement, Bannum has constantly sought more time to submit and properly document its proposal. Bannum's first complaint that it lacked enough time came in conjunction with its protest of the small business set-aside. Bannum noted that as a large business, it had "lost 47 days while ineligible" to compete during the period of time that the Solicitation was a small business set-aside. Bannum's

Motion at 11. Bannum conveniently neglected to mention that all non-small business offerors, including Dismas, operated under the same time constraints.

BOP's reinstatement of Bannum after Bannum should have been eliminated following Bannum's response to Discussion Notice #1 is just one example of how BOP gave Bannum more than equal treatment in this re-evaluation. BOP granted this extraordinary remedy to no other offeror in this procurement. Except for refraining from eliminating Bannum and allowing Bannum more time to respond [redacted], BOP, throughout this re-evaluation and discussions with offerors, gave Bannum the same deadlines as every other offeror. Every other offeror remaining in the competition managed to meet those deadlines. Bannum can point to no law or regulation that would require BOP to grant Bannum yet even more time.

### B. Bannum Has Not Shown That BOP Had Any Specific Intent To Injure Bannum

When claiming bad faith on the part of Government officials, the protester must show "well nigh irrefragable proof" of a specific intent on the part of the Government officials to harm the protester. *L.P. Consulting*, 66 Fed. Cl. at 243. Government officials in conducting procurements enjoy a presumption that they have acted in good faith. *See Galen Medical Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004). A protester may overcome this presumption only through alleging and proving, by clear and convincing evidence, that BOP acted in bad faith. *Id.* at 1330. "The level of proof to overcome this presumption is high, often described as requiring 'well nigh irrefragable proof.'" *L.P. Consulting*, 66 Fed. Cl. at 243; *see also Galen*, 369 F.3d at 1330. In this regard, Bannum must provide clear evidence of a specific intent on the part of BOP to injure Bannum. *See L.P. Consulting*, 66 Fed. Cl. at 243; *Galen*, 369

F.3d at 1330; *Librach v. United States*, 147 Ct. Cl. 605, 614 (1959); *cf. Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005). Bannum has failed to show that BOP acted in bad faith

Here, BOP acted with, if anything, a surfeit of care and consideration for Bannum. BOP conducted a proper re-evaluation of Bannum's (and other offerors) proposals. BOP scrupulously followed law and regulation in re-evaluating the proposals and did not abuse its discretion in eliminating Bannum from the competition. (As noted above, if anything, Dismas has been at a competitive disadvantage in the competition.) Here, the record clearly shows that BOP, far from acting with animus towards Bannum, actually has provided Bannum multiple extraordinary opportunities over the course of this procurement to provide a proposal meeting the Solicitation's requirements. Bannum bears the responsibility for regularly failing to meet the requirements. BOP properly eliminated Bannum's proposal.

### C. Dismas Properly Provided All Of The Right To Use Documentation Required By The RFP, No Opposition Exists From The Property Owners' Association To Dismas's Use Of The Facility As A CCC, And No Basis Exists For Dismas's Disqualification

In this proceeding, Bannum has conflated two separate and failed arguments from prior proceedings in order to contend that BOP, in its re-evaluation, should have addressed Dismas's right to use its proposed site location, and possibly even disqualified Dismas. Bannum has claimed, and continues to claim here, that Dismas did not provide the documentation required by the RFP to evidence its right to use its proposed facility, and that the Edgewater North Commerce Park Property Owners Association ("ENCPPOA") was "strongly opposed to Dismas' CCC and that the Association considered this residential use to be prohibited by a private

restrictive covenant on the property."[3] Bannum's Motion at 30-31. Bannum insists that BOP failed to address what Bannum claimed to be "materially incomplete" evidence of Dismas's right to use the proposed facility, and continues to insinuate that Dismas should be disqualified for not disclosing the Covenants to BOP. Bannum's Motion at 31.

### 1. Dismas Provided The Documentation Required By The RFP Concerning Its Right To Use

The RFP neither requested nor required any property owners' association documents. Nevertheless, Bannum contends that Dismas was required to submit the Covenants as part of its "official documentation that demonstrates [offerors] have a right to use" the proposed facility. AR 119. Undaunted by the fact that Dismas submitted all of the documents required by the RFP (*see* AR 856-60), and undaunted as well by clear language to the contrary in the RFP's Compliance Matrix, Bannum argues that Dismas should have included the Covenants as part of its evidence of its right to use the site as a CCC. Bannum's Motion at 31. The RFP states: "Acceptable evidence of right to use is limited to deeds, leases, bills of sale, options to lease, options to buy, contingency leases, or contingency deeds." AR 119. Any kind of covenants, restrictive or not, were excluded from the types of documents an offeror could provide as

---

[3] This "restrictive covenant," according to Bannum, "severely limits or prohibits the right of use the property [sic] as a [Community Correction Center ("CCC")]." AR 3049. The particular covenant Bannum cites is Article VI, Section 2, of the Declaration of Covenants and Restrictions for Edgewater North Commerce Park ("Covenants") (AR 1239), a governing document of the ENCPPOA, the association of property owners of sites that include Dismas's proposed CCC facility. That covenant states, in pertinent part: "No lot shall be used except for commercial, warehouse, and industrial purposes . . . [and n]o changes may be made in buildings . . . without the consent of the Architectural Control Committee as provided herein." AR 1239. In Orange County, Florida, where Dismas's proposed facility is located, a CCC is not a residential use. AR 862. A CCC in that jurisdiction is an industrial use, as evidenced by the letter from the Orange County, Florida zoning official that Dismas submitted in its proposal. AR 862.

evidence of its right to use. Even were it material, Dismas could not have submitted the Covenants as part of its evidence of its right to use the proposed site as a CCC facility.

Perhaps realizing the tenuousness of this argument, Bannum has cast about for any possible category of information required by the Solicitation under which Dismas was required to proffer to, or even simply inform, BOP of the Covenants. For example, Bannum further contends that Dismas should have submitted the Covenants in its proposal in the section on Local Area Concerns, or perhaps as part of its Community Relations Plan. Bannum's Motion at 31. In point of fact, Dismas submitted all of the information required by the RFP in these sections (*see* AR 866-80). Contrary to Bannum's argument, there is no support in the RFP that these Covenants were a required submission under any category of required information. The RFP nowhere mentions nor requires the production of covenants, restrictive or otherwise, nor does it mention or require the production of any property owners' association documents. *See* AR 1-149. A hearsay declaration by Bannum's real estate agent does not alter the clear language of the RFP.

**2. No Opposition Exists From The ENCPPOA To Dismas's Use Of The Facility As A CCC**

In its papers, Bannum proffers the declaration of its real estate agent, who in turn repeats a rumor from a property developer, allegedly heard and declared to by Bannum's real estate agent. AR 1226. That rumor, ostensibly heard by the real estate agent while apparently attempting to identify a site location for Bannum, was that "there was resistance to another group that planned to locate a CCC there." AR 1226. The "group" was never identified, and, apparently, Bannum itself never spoke with the property developer or the ENCPPOA. As noted

above, this information is hearsay, lacks credibility, and should be treated accordingly. *See* Fed. R. Evid. 802; Fed. R. Evid. 403.

Based on this scanty (and inadmissible) evidence, Bannum has claimed that the ENCPPOA's Architectural Control Committee ("ACC") would never approve the use of the facility as a CCC ("There is no likelihood that the Architectural Committee will permit a CCC use in their industrial park."). AR 3071.

When faced with this allegation at the GAO, Dismas pointed out that Dismas had obtained the proper zoning approval and that the restrictive covenant contained no limitation applicable to Dismas operating a CCC at its proposed site. AR 1191. In its decision on the matter, the GAO strongly agreed with Dismas.

> To the extent that the protester argues that the awardee's proposal now should be disqualified based on Dismas's failure to disclose the covenant in its proposal, this argument is without merit. There simply is no support in the record for the underlying premise of any such argument—that the awardee is barred from using the proposed site for operation of a CCC site; Bannum merely states in a conclusory fashion that a CCC is a residential use, and therefore is not an authorized use of the proposed site. The protester's argument, as well as any assumption that the property owners' association will interpret the covenant in question as prohibiting the operation of a CCC and will choose to take legal action to enforce such an interpretation, amount to unsupported speculation, and thus do not give rise to a valid basis of protest [footnote and citation omitted]. In any event, whether Dismas succeeds in performing in the manner that it has proposed is a matter of contract administration not for review by our Office. Bid Protest Regulations, 4 C.F.R. § 21.5(a) (2006).

AR 3083. In addition, the record clearly shows that the ENCPPOA ACC *has approved* Dismas's renovation plans for the CCC facility, and has evinced no opposition to Dismas's operating a CCC facility. AR 3789-3802.

### 3. No Basis Exists For Dismas's Disqualification

On the basis of a "requirement" that did not exist in the RFP and the hearsay evidence in its proffered declaration, Bannum now contends that Dismas should be disqualified. Disqualification, much like injunctive relief itself, is an extraordinary remedy to be applied only in extraordinary situations following an opportunity to be heard and, at the very least, some credible evidence that supports the action. *See Sys. Plus, Inc. v. United States*, 69 Fed. Cl. 757, 766-69 (2006). Bannum, however, can point to nothing in the record that supports this contention, other than perhaps Bannum's own confusion regarding whether a CCC is a residential or an industrial use in Orange County, Florida. AR 1226 ("the developer . . . warned me that a residential facility like a CCC may not be permitted").

Ignoring the evidence in the record, in this action Bannum continues to insist that BOP was required to address the Covenants in the discussions held as a result of BOP's voluntary corrective action, and possibly even to disqualify Dismas. Bannum's Motion at 32. Since, however, Dismas was not required to submit the Covenants to BOP as part of its proposal, and because Dismas had obtained the necessary approvals from the ENCPPOA for its planned renovations to use the facility as a CCC, BOP had and has no need to address this issue. In point of fact, Dismas was and remains ready, willing, and able to perform at the site it has proposed. For all of the reasons stated above, Bannum's contention that Dismas should be disqualified must fail.

## III. BANNUM HAS FAILED TO SHOW THAT IT SHOULD BE AWARDED INJUNCTIVE RELIEF

As noted above, Bannum has failed to prove a prejudicial error or illegality in the procurement. For that reason alone, Bannum should not be awarded injunctive relief. Even

assuming *arguendo* that it has proved some error, Bannum cannot show that injunctive relief is otherwise justified, because Bannum will suffer no irreparable harm, the balance of the harms favors Dismas and BOP, and the public interest counsels against injunctive relief. *See PGBA*, 389 F.3d at 1229 (denying injunctive relief despite prejudicial error in procurement).

### A. Bannum Will Suffer No Irreparable Harm Should The Court Not Remand This Case

Bannum will suffer no irreparable harm. *See, e.g., PGBA*, 389 F.3d at 1229. Irreparable harm is harm for which the plaintiff has no other adequate remedy. *See, e.g., Info. Sciences Corp. v. United States*, 73 Fed. Cl. 70, 127 (2006) ("[w]hen assessing irreparable injury, the relevant inquiry in weighing this factor is whether the protesters have an adequate remedy, in the absence of an injunction") (citing *OTI America, Inc. v. United States*, 68 Fed. Cl. 646, 659 (2005); *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 743 (2000)).

This Court has held that a protestor suffers irreparable injury when it has been deprived of the opportunity to compete with other offerors on a level playing field, which no legal remedy can adequately redress. *See Info. Sciences. Corp.*, 73 Fed. Cl. at 127-28 (citing, *inter alia, Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 110 (2004)); *see also SAI Indus. v. United States*, 60 Fed. Cl. 731, 747 (2004) ("Irreparable injury can be shown in the form of lost opportunity to fairly compete for and perform work under the contract, including but not limited to lost profits that would generate therefrom.") (citation and internal quotation omitted).

Here, if anything, the playing field was tipped in favor of Bannum, not Dismas. BOP allowed Bannum multiple opportunities [redacted] meets the Solicitation's requirements. In the course of this procurement, BOP has already twice elected to reinstate Bannum into the competition, when BOP would have been well within the law and its authority

in eliminating Bannum. At every step, Bannum has loudly complained, pointing its finger at everyone save Bannum itself. In response, BOP has bent over backwards to accommodate Bannum, while first delaying contract award and now delaying commencement of performance on the awarded contract. In short, Bannum has not been irreparably harmed based on an evaluation that, if anything, skewed in Bannum's favor.

### B. The Balance Of Hardships Favors Dismas And BOP

The balance of hardships favors Dismas and BOP, not Bannum. *See, e.g., Info. Sciences Corp.*, 73 Fed. Cl. at 128 (citing *PGBA*, 389 F.3d at 1229). Here, the harm to Dismas and BOP easily outweighs any harm to Bannum. Unlike Bannum, Dismas is ready to begin contract performance immediately following the disposition of this case. Bannum's requested relief, if granted, would not only be extraordinary, but would also continue to delay permanent operations at BOP's CCC facility in Orlando, already delayed due to Bannum's failed bid protest at the GAO and its actions in this Court. Accordingly, the balance of hardships tilts in favor of Dismas and BOP here.

### C. Injunctive Relief Will Not Serve The Public's Interest In Proper Enforcement Of Procurement Laws

Injunctive relief is not in the public interest. *See, e.g., Info. Sciences. Corp.*, 73 Fed. Cl. at 128-29 (citing *PGBA*, 389 F.3d at 1229). Here, the public interest is best served by allowing BOP's inmates in the Orlando area to reside in a permanent CCC facility rather than accommodate them through the use of bridge contracts or other artifices. *See Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999) (noting that the public interest is served by "timely completion of government contracts"). Thus, the public interest is best served in having Dismas's permanent CCC facility operational as soon as possible.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons and those stated by the Government in its Cross-Motion for Judgment on the Administrative Record and Response to Bannum's Motion for Summary Judgment on the Administrative Record, Dismas respectfully requests that the Government's and Dismas's motions be granted, Bannum's motion be denied, and this case be dismissed with prejudice.

Dated: March 14, 2006

Respectfully submitted,

s/Alex D. Tomaszczuk by s/ Daniel S. Herzfeld
Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102

703.770.7940
703.770.7901 (fax)

Attorney of Record
Dismas Charities, Inc.

*Of Counsel*:

Daniel S. Herzfeld
Orest J. Jowyk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102
703.770.7900
703.770.7901 (fax)