**AGREED UPON REDACTED COPY**
**MAY BE MADE PUBLIC**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| BANNUM, INC. | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-109C |
| v. | ) | Judge Allegra |
| | ) | **FILED UNDER SEAL** |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

# BANNUM'S MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD

Michael A. Gordon
s/ Michael A. Gordon
Counsel of Record for Bannum, Inc.
HOLMES & GORDON
17 West Jefferson Street, Suite 202
Rockville, Maryland 20850
(301) 340-1251 (telephone)
(301) 340-1253 (facsimile)

OF COUNSEL:
Fran Baskin, Esquire
HOLMES & GORDON
17 West Jefferson Street, Suite 202
Rockville, Maryland 20850
(301) 340-1251 (telephone)
(301) 340-1253 (facsimile)

March 23, 2007

**AGREED UPON REDACTED COPY**
**MAY BE MADE PUBLIC**

## TABLE OF CONTENTS


| | |
|---|---|
| BANNUM'S REPLY BRIEF | 1 |
| I. The BOP Provided an Unreasonably Inadequate Time for Responses to Discussions | 1 |
| A. Factual Background | 2 |
| B. Bannum's Response Does Not Support the Unreasonable Due Date | 4 |
| C. Bannum's January 26, 2007 Response Warranted Further Discussions | 4 |
| D. The RFP Required Discussions | 6 |
| E. The BOP Was Required to Mitigate Dismas' Competitive Advantage | 7 |
| II. Bannum was the Victim of Inconsistent and Unfair Discussions | 10 |
| A. [redacted] Zoning Remains Deficient | 10 |
| B. Dismas Received Unwarranted Favorable Treatment in Discussions | 12 |
| C. [redacted] Should Be Disqualified for Misrepresentations | 15 |
| III. Bannum Has Been the Victim of Improper BOP Retaliation | 17 |
| IV. Bannum Has Met the Standards for Injunctive Relief | 18 |
| CONCLUSION AND REQUEST FOR RELIEF | 20 |
| **COURT CASES** | |
| <u>Alfa Laval Separation v. United States</u>, 175 F.3d 1365 (Fed. Cir. 1999) | passim |
| <u>Beta Analytics v. United States</u>, 69 Fed. Cl. 431 (2005) | 7-8 |
| <u>Dubinsky v. United States</u>, 43 Fed. Cl. 243, 264 (1999) | 12 |
| <u>Filtration Development CC v. United States</u>, 60 Fed. Cl. 371, 384 (2004) | 18 |
| <u>Hospital Clean of Texas v. United States</u>, 65 Fed. Cl. 618, 624 (2006) | 18 |
| <u>International Outsourcing Services LLC v. United States</u>, 69 Fed. Cl. 40 (2005) | 6 |

**AGREED UPON REDACTED COPY**
**MAY BE MADE PUBLIC**


JWK International Corp. v. United States, 52 Fed. Cl. 650, 661 (2002) 12

Marco Civic Association, Inc. v. Mazzini, 881 So.2d 99, August 27, 2004 (2nd Dist. Fla. App. 2004) 13

Mantech Telecommunications and Information Systems Corp. v. United States, 49 Fed. Cl. 57, 79 (2001) passim

Norfolk Dredging, Co. Inc. v. United States, 58 Fed. Cl. 167, 184-85 (2003) 20

Seattle Security Services, Inc. v. United States, 45 Fed. Cl. 560, 569 (2000) passim

Textron, Inc. v. United States, 74 Fed. Cl. 277, 291-2 (2006) 7-8


**STATUTES AND REGULATIONS AND POLICIES**


41 U.S.C. §253a(a)(1) 9

13 CFR §121.101, NAICS Code 623990 15

13 CFR §121.103 15

FAR §15.306(c)(3) 6

FAR §15.306(d)(3) 6

FAR §52.219-1 16

FAR §19.308(a)(1) 16

FAR §19.202-5 16

FAR §19.702(b)(1) 16

BOP's CCC Program Statement 7310.04 11

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| BANNUM, INC.<br>Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES,<br>Defendant, | ) | No. 07-109 C<br>Judge Allegra<br>**FILED UNDER SEAL**<br>**PROPOSED REDACTED VERSION** |
| and | ) | |
| DISMAS CHARITIES, INC.,<br>Defendant-Intervenor. | ) | |

BANNUM'S REPLY BRIEF

Defendant, United States, acting through the Federal Bureau of Prisons ("BOP") has provided the Court with a sanitized or inaccurate version of the facts and legal arguments presuming the BOP has discretion to create unfair competitive advantages and inconsistent treatment in remedial action. The facts and law are to the contrary.

I. The BOP Provided an Unreasonably Inadequate Time for Responses to Discussions

Defendant focuses first on whether Bannum's revised offer met all the requirements in the Request for Proposals ("RFP"), effectively contending that Bannum's proposal was non-responsive. As discussed below, Bannum does not contend that the [redacted] revisions submitted on January 26, 2007 met all RFP requirements. However, in a negotiated procurement, and especially here, where discussions were to remedy prejudicial BOP procurement errors, the purpose was not to eliminate a "non-responsive" offeror but to provide a reasonable and fair opportunity through discussions to remedy the harm caused. See Mantech Telecommunications and Information Systems Corp. v. United States, 49 Fed. Cl. 57, 79 (2001). Bannum was deprived of an equal or fair opportunity by unreasonable response times.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

A. Factual Background

Defendants do not contest that many months are normally allotted in Community Correctional Center ("CCC") procurements [redacted]. Defendants also do not contest that the BOP knew when it took "remedial action" on December 11, 2006, that Bannum and [redacted] Yet, the BOP's internal schedule, dated the day after issuing the "remedial action," showed completion of discussions and Final Proposal Revisions ("FPR") in a maximum of 6 weeks. AR 4276. The prejudice from BOP's procurement errors to Bannum and [redacted] was ignored and indeed, exacerbated.

Defendants cannot deny that by December 20, 2006, the BOP was on notice that [redacted] AR 455-56, 4201-04. Yet, on December 27, 2006, the BOP refused to provide Bannum with an anticipated performance date, [redacted] AR 4281, 4286.[1]

On December 28, 2006, discussion questions based on the facilities proposed in initial offers were sent. On January 4, 2007, [redacted] withdrew because after the extended period following the improper award to Dismas, [redacted] AR 4876. On January 8, 2007, Bannum [redacted] advised the BOP [redacted] AR 4386.

[1] The BOP does not deny the adverse impact [redacted]; thus, the fact that the Source Selection Authority ("SSA") would not disclose a performance date internally is irrelevant.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

In spite of the apparent prejudice to Bannum and [redacted] caused by the improper award to Dismas, there was no change in the BOP's approach to "remedial action." When evaluating Bannum's January 8, 2007 response to discussion questions [redacted] the Source Selection Authority ("SSA") recognized that under the RFP, [redacted]. She also recognized that Bannum had only 30 days since remedial action was initiated [redacted] She then stated that because Bannum [redacted] under "normal conditions," Bannum would have been eliminated. Because she fully understood that conditions were not "normal"-- there had been "an extended period between the award and re-evaluation" (emphasis added),-- she:

> "determined it was appropriate to allow Bannum's proposal to remain under consideration and for Bannum to be able to respond to a second round of discussions." AR 4215.

However, her subsequent actions, first allowing only eight days for a response, a time limit consistent only with the award schedule planned on December 12, 2007, and then eliminating Bannum, show that no meaningful consideration was given the actual impact of the extended period between the improper award and the re-evaluation. "...Remaining under consideration" to the BOP merely reflected the BOP's realization that same day that a second round of discussions was necessary because the revised offers of Dismas [redacted]. AR 4216.

The BOP's rationale for an eight-day time period is not explained in the AR and was totally unreasonable [redacted]. It is obvious that the eight-day response time was based on the time needed by [redacted] which gained an unfair

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

competitive advantage from the improper award, and [redacted], which fortuitously was not prejudiced by the extended period following the improper award.

B. Bannum's Response Does Not Support the Unreasonable Due Date

Because the due date cannot be justified by the RFP, Defendant bases its argument that eight days was "more than sufficient" to submit [redacted] on Bannum's January 8, 2007 letter. This post-hoc argument is not attributed to the SSA or an AR cite showing any such actual contemporaneous rationale.

Bannum did not reasonably represent in its January 8, 2007 letter that [redacted] would be submitted in a few days. After protesting to the BOP that it had only effectively been given six business days to [redacted] after learning of the corrective action, Bannum stated:

[redacted]

Thus, Bannum stated only that [redacted]. Bannum did not (and could not) provide a date when they would be submitted. AR 4386-87.

C. Bannum's January 26, 2007 Response Warranted Further Discussions

After given the unreasonable date of January 26, 2007 to respond, through a tremendous effort, Bannum was able to [redacted] while meeting the other requirements. Further discussions were warranted.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

While Bannum's [redacted] in the unreasonably short period was accomplished. The BOP was responsible for [redacted]. AR 4423. This situation resulted from the BOP's unreasonable refusal to provide a performance date based on the BOP's known, anticipated award date. AR 4212. Had discussions continued as Bannum expected, with a reasonable response time, this issue would have been quickly resolved.

Bannum provided [redacted]. [redacted]. AR 4447. There is no RFP requirement for [redacted] are accepted by the BOP in other procurements. No reason is given for not accepting this document.

Defendant cannot reasonably dispute that Bannum submitted [redacted]. AR 4490-4500. While [redacted] were sent a few days later, this did not justify eliminating Bannum in admittedly other than "normal" circumstances.

Although the BOP identified alleged deficiencies in discussions from [redacted] were not included. AR 4406-07. Thus, discussions were not meaningful and the BOP could not have eliminated Bannum under "normal" conditions. Mantech, 49 Fed. Cl. at p. 71. While [redacted] could not have been obtained in eight days, Bannum would have submitted them in a reasonable time.

Defendant's post-hoc implication that BOP elimination was somehow justified because Bannum has not yet submitted this information to the BOP is irrelevant to the

BOP's contemporaneous decision. Indeed, this argument should not have been made. When the BOP eliminated Bannum, the SSA expressly stated that no further information would be accepted or considered. AR 4789.

Further, the Source Selection Evaluation Board ("SSEB"), which identified the alleged defects, [redacted] This offer was inconsistent with any implication that these issues could not have been easily resolved within a reasonable time. AR 4827.

In sum, Defendants are really contending that BOP's elimination of Bannum should be upheld on responsiveness principles, as though the BOP could resurrect a right to award without a reasonable opportunity in discussions when it came to Bannum. As discussed below, such views are contrary to the RFP and case precedent.

E. The RFP Required Discussions

The RFP states that prior to award, the situation here, [redacted] AR 139. Thus, the RFP required that Bannum be given a reasonable opportunity to remedy any deficiencies [redacted] through discussions. Therefore, Defendants reliance on FAR §15.306 is misplaced as Bannum had no notice it would be eliminated. Further, neither regulation was invoked; nor did ratings exist at that time. Cf. International Outsourcing Services LLC v. United States, 69 Fed. Cl. 40 (2005). Again, an agency must provide a reasonable opportunity to respond at each stage of discussions. What is reasonable here must be evaluated based on this admittedly non-normal situation.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

E. The BOP Was Required to Mitigate Dismas' Competitive Advantage

In Beta Analytics v. United States, 69 Fed. Cl. 431 (2005), this Court held that when an agency takes remedial action resulting from agency errors, the agency must mitigate or neutralize prejudice to the other offerors so that all can compete on a level playing field. See also Textron, Inc. v. United States, 74 Fed. Cl. 277, 291-92 (2006). Likewise, in Mantech, 49 Fed. Cl. at p. 72, this Court recognized the principle that corrective action was to put offerors in the same competitive position. In that case, the Court reviewed corrective action, and precluded an agency from giving one offeror an unfair competitive advantage. The BOP's remedial action did not meet these standards.

The BOP was well aware that as a result of its erroneous award to Dismas on initial offers, [redacted] the BOP knew that Dismas would gain an unfair competitive advantage from the improper award, [redacted].

Instead of mitigating this unfair advantage, the BOP implemented a schedule with unreasonable times for discussion responses which directly prejudiced offerors in the competitive range [redacted] Not surprisingly, Dismas had argued for a similar unreasonable discussion schedule in opposing Defendant's motion to dismiss the first litigation. AR 4135. The BOP likely planned this schedule to eliminate Bannum, leaving only the lower ranked [redacted] This would enable the BOP to award to Dismas and potentially avoid paying Dismas [redacted] in termination costs.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

To attempt to escape the consequences of BOP's improper plan, Defendant interprets Beta Analytics overly narrowly and illogically. In Beta, as a result of agency errors, the awardee was able to hire the protester's work force, giving the awardee an undue competitive advantage in the re-evaluation. The Court properly required the agency to mitigate this unfair advantage.

Defendant claims that Beta applies only if Bannum had [redacted] from the improper award ([redacted] in Beta). However, Defendant offers no principled basis for why this Court should exclude the other types of direct harm to a prejudiced offeror in reviewing remedial action.

In this case, the improper award on initial offers directly caused Bannum [redacted] creating an added burden on Bannum (and [redacted]). The unfair competitive advantage to Dismas could have been remedied by providing a reasonable time to respond in discussions. Defendant offers no reason for its schedule. None exists.

Dismas' interpretation of Beta is equally flawed. Dismas claims that Beta applies only when the award was found to be improper and here, Defendant did not concede that an error had been made. This argument must also be rejected.

The contemporaneous evaluation and post-award record shows that the award on initial offers, was at best, the result of BOP procurement errors. Dismas failed in its initial offer to meet a minimum mandatory requirement—to submit [redacted] While Defendant and the BOP have attempted to spin this fact into ambiguity, the contemporaneous record shows that the BOP's Technical Evaluation Panel ("TEP") unanimously considered Dismas' offer deficient but found Bannum compliant. AR 166-71.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Further, as part of its remedial action, the BOP did not "drop" the requirement but simply defined a [redacted] by the substance of what a [redacted] was to include. The BOP had always accepted Bannum's [redacted] on the basis of this substantive interpretation. Accordingly, the SSEB again found [redacted] AR 4221-22. Thus, under any reasonable interpretation of the requirement, the BOP's award to Dismas based on its materially non-compliant initial offer was illegal and a BOP error. 41 U.S.C. §253a(a)(1); Alfa Laval Separation v. United States, 175 F.3d 1365 (Fed. Cir. 1999).

Moreover, Bannum has reason to believe that remedial action was taken because the BOP could not or would not explain why the same deficiency in Dismas' initial offer, found unanimously by the BOP evaluators, had been improperly re-characterized to make award on initial offers, as well as other manipulations and improprieties.

In any event, an agency's decision to take remedial action without admitting fault is not an excuse to create an unfair competitive advantage. Mantech, 49 Fed. Cl. at p. 72 (Court rejected improper proposed corrective action without finding agency error).

Dismas' reliance on Textron is also misplaced. In that case, Textron's offer was excluded from the competitive range. Textron protested that after its elimination, the agency had interfered with an exclusive teaming agreement by requesting the awardee to contact its subcontractor, thereby disclosing proprietary information.

The agency took corrective action, a part of which was to investigate Textron's protest claims. However, the agency found no violation and discussions were held. At this time, Textron and its subcontractor, EDO, reaffirmed their exclusive agreement. However, EDO breached that agreement and provided assistance to the awardee.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Textron filed a second protest alleging that the agency should have taken corrective action to protect Textron's exclusive teaming agreement by advising the awardee that it would receive no credit for input received from EDO. The Court rejected this argument because the agency had done nothing to cause EDO to breach the teaming agreement. Unlike here, Textron's problem did not result from the agency's direct action in eliminating Textron through a procurement error, but from EDO's breach of the parties' private teaming agreement.

Defendants attempt to distinguish the GAO cases also fail. In each case, the agency's corrective action, as here, directly created an undue competitive advantage.

II. Bannum was the Victim of Inconsistent and Unfair Discussions

Defendant's contention that Bannum somehow received more favorable treatment is contradicted by the record. Bannum's elimination reflects improper, inconsistent and unfair discussions. Indeed, the other offerors should be disqualified, leaving Bannum as the only responsible offeror that is eligible to win this contract.

A. [redacted] Zoning Remains Deficient

Prior to the improper decision to award on initial offers, [redacted] proposal was considered deficient because the zoning for its facility had two types of offenders which could not be assigned to that CCC by the BOP: (1) sex offenders and (2) inmates with a history of violence. The zoning grant from the City of Orlando stated as a condition:

> "Sex offenders and individuals with a history of violence are not accepted into the program." AR 2018.

> The TEP unanimously found:

> "Offeror shall submit revised zoning letter to accept all offenders, regardless of their offenses." AR 2381.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Yet, to create a misimpression of competition, late in the evaluation process, an unnamed BOP reviewer eliminated this "significant" deficiency. AR 1554, 2473.

When remedial action was taken, the SSEB identified this significant defect:

> "Have [redacted] provide an update to their zoning status. The letter from the City of Orlando states that no sex offenders or individuals with a history of violence are accepted into the program."

The SSEB did not designate this flaw as a deficiency or clarification, apparently waiting to be told what to do by unnamed others. AR 4204. Later, without explanation, and in direct conflict with the TEP's initial findings, the restrictions on [redacted] zoning were re-labeled as a "clarification." Cf. AR 4960 with 172, 1554, 2381, 2386, 2400.

Defendant misconstrues Bannum's position as a claim that all offenders must be assigned to a CCC. Rather, Bannum relies on RFP, §B.1, which states that the offeror:

> "shall provide CCC services to male and female Federal offenders held under authority of various United States Statutes located in the Orlando (Orange County), Florida area...
>
> The Government intends to refer all eligible CCC requirements under this solicitation to the successful contractor." (emphasis added). AR 6.

An eligible offender is one selected by the BOP for assignment to a CCC. The BOP's CCC Program Statement 7310.04, which Defendant avoids, shows that both sex offenders and inmates with a history of violence are among the eligible offenders for CCC assignment. AR 1223-24. While sex offenders are not "ordinarily" assigned to a CCC, as shown by the evaluation, the BOP may and often does assign them to CCCs.

Only a subset of inmates with a history of violence are prohibited -- those whose history suggests to the BOP a "substantial and continuing threat to the community." Id. The BOP is to be guided by a number of factors in making this determination. Not included is whether the local zoning authority has excluded all such inmates. AR 1224.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

That is why this restriction on the BOP was properly labeled a deficiency and a proposal revision requested before the BOP's manipulations began. Dubinsky v. United States, 43 Fed. Cl. 243, 261-62 (1999); cf. JWK International Corp. v. United States, 52 Fed. Cl. 650, 661 (2002)(request for proposal revision is not a clarification).

[redacted] was unable to resolve this zoning defect with the City within the unreasonable times imposed for the first response to discussions. Yet, [redacted] mere promise to try to have the sex offender restriction removed, based on [redacted] view of City zoning law, was accepted by the SSEB. AR 4212, 5190. In contrast, Bannum was found deficient because [redacted]. Discussions were inconsistent, improper and unequal. See Seattle Security Services, Inc. v. United States, 45 Fed. Cl. 560, 569 (2000).

After receiving more time than Bannum was allowed, [redacted] still was unable to have the restrictions from [redacted] agreement with the State deleted. The City's letter submitted with [redacted] FPR confirmed the improper restriction on assigning persons with a history of violence by stating: "You will need to comply with all other State requirements." AR 5210. BOP's acceptance of this zoning was an improper relaxation of the RFP requirements and showed unfair and disparate treatment. Alfa Laval.

B. Dismas Also Received Unwarranted Favorable Treatment in Discussions

Bannum's protest showed the BOP that Dismas' evidence of its right to use was deficient because it was materially incomplete. Further, it showed that Dismas was deficient in the Site Availability and Community Relations factors because it had not [redacted]. AR 1226. Yet, the BOP improperly and disparately chose not to question Dismas on these issues in discussions. AR 5017.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

The record supporting these defects is compelling. Defendants ignore the fact that Bannum's real estate agent attested that before initial offers were submitted, he spoke to Timothy Vickers of the Edgewater Industrial Park Association's Architectural Committee, the party to the private covenant which can enforce that private right. Mr. Vickers told the agent he believed a CCC was a prohibited residential use and had vehemently resisted a "group that planned to locate a CCC there." AR 1226. Bannum knows that "group" was Dismas. Further, Dismas was aware [redacted] that a CCC was a residential use. AR 179. Yet, while referring to the private covenant, [redacted], preventing BOP review. AR 860.

It also is telling that except for a heading in its brief[2], Dismas has carefully avoided denying the above facts relating to its pre-submission knowledge of the Association's opposition. Instead, Dismas offers technical arguments: (1) the private covenant does not apply based on City of Orlando zoning classifications; (2) the RFP did not specifically require and even "excluded" submission of a restrictive covenant with its offer; and (3) Bannum's declaration is hearsay. None of these diversions has merit.

In Florida, enforcement of a private restrictive covenant is not controlled by local zoning classifications. Marco Civic Association, Inc. v. Mazzini, 881 So.2d 99 (2nd Dist. Fla. App. 2004) (local zoning does not control effect of a private restrictive covenant).[3]

---

[2] Dismas only proof to support its heading is a citation of materially incomplete documents that were not admitted into the AR by this Court. Dismas' citation to this "record" is improper and must be rejected. If allowed, Bannum should be granted the discovery requested in its opposition and will prove Dismas' pre-submission knowledge, as set forth in Bannum's response to that motion. AR 3822-24.

[3] The GAO avoided this case law, which was cited in Bannum's comments, AR 1209, and relied for its conclusion on the fact that the BOP was unaware of covenant. The GAO did not "reject" the Association's and Bannum's view that the private covenant prohibited CCCs as a residential use; the GAO merely stated that the local zoning classification was "consistent" with CCC use. AR 1275-77.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Dismas' claim that the RFP does not require that a private covenant, part of its purchase agreement, AR 860, be submitted to show a right to use, and even "excluded" its submission is specious. This private restrictive covenant directly affects Dismas' right to use the facility as a CCC and had to be fully disclosed.

The real estate agent's affidavit states under oath what he was directly told by Mr. Vickers. AR 1226. It is not hearsay, particularly in a case decided on an AR. Given Dismas' avoidance of a direct denial of these facts, his statements are credible.

Further, under the Site Validity and Suitability and Community Relations factors, the RFP required identification of local area concerns and proof of acquiring, maintaining and mediating local public support. AR 119-20. Disclosure of known local opposition and a plan to mitigate it were required. [redacted], Dismas [redacted]. AR 187, 865. Dismas' offer was therefore deficient.

The BOP knew of these defects in Dismas' offer and allegations of Dismas' non-responsibility from the protests. Yet, in spite of its statements to this Court, the BOP chose not to ask Dismas any questions on these topics. As a result, Bannum was found deficient for not meeting requirements [redacted], while Dismas was allowed to avoid its defects. Discussions were inconsistent and unequal. <u>Seattle</u>, <u>supra</u>.

Defendant's attempt to disown the BOP's promises in its Motion to Dismiss must be rejected as it would condone sharp practices by the Government. To avoid having the Court decide Bannum's request for a declaratory judgment, Defendant represented:

> "No decision can be made regarding the propriety of Dismas' bid until the discussions are completed. Accordingly, only if Dismas is found non-responsible <u>as a consequence of discussions</u> can Bannum claim that it was harmed by the BOP's method of re-evaluation." AR 4064. (emphasis added).

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Defendant claims there was no specific promise in its motion that the BOP would actually inquire about these allegations in discussions. While the word was not used, the promise was unmistakable. If Defendant intended to leave open the possibility that the BOP could ask no questions in discussions from which it could have made determinations on these issues, the reasons given by Defendant to this Court to refrain from deciding the request for declaratory relief would have been materially misleading.

Discussions would show that Dismas was concealing the opposition of this local area concern from the BOP to enhance its technical rating. Dismas will be unable to legitimately explain why it should not be disqualified. Further, even if allowed to attempt to correct these deficiencies, Bannum believes that Dismas will be unable to mitigate the Association's opposition which will result in a lower technical score from objective evaluators. The BOP's failure to question Dismas shows patent, improper favoritism.

C. [redacted] Should Be Disqualified for Misrepresentations

The AR shows that [redacted] misrepresented its size to gain a competitive advantage and should be disqualified as non-responsible. Bannum's letter dated December 12, 2005 showed, based on the public records cited, that [redacted] and its "sister corporation," [redacted], are affiliates, and that their total annual receipts are in excess of the $6 million limit for CCC contractors. AR 1455-57; 13 CFR §§121.103, 121.101, NAICS Code 623990.

The BOP knew that [redacted] had first represented itself as a large business, was in possession of the annual receipts for [redacted] BOP contracts, and was aware of [redacted] affiliation and annual income. AR 1334A, 1455-57. Thus, the BOP had more than enough information to recognize that [redacted] had misrepresented its size.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Instead of finding [redacted] non-responsible, the BOP began a cover up, first by not mentioning [redacted] in withdrawing the set aside. AR 1437-38. The BOP then allowed [redacted] to participate in the competition, kept [redacted] in the competitive range, and asked no discussion questions about its size certification. After discussions were complete, the BOP did not hesitate to ask for a subcontracting plan, showing it was fully aware of [redacted] misrepresentation. AR 4251. [redacted] then claimed that it was changing its size to large "due to our current situation." AR 5251. The BOP did nothing.

Defendant argues that [redacted] size was irrelevant once the small business restriction was removed and that it had no obligation or reason to "police" this issue. The regulations and common sense are to the contrary.

[redacted] like all offerors, had to certify as to its size under the RFP. FAR §§52.219-1, 19.308(a)(1).[4] Award can only be made to a responsible offeror, which does not include offerors that submit false certifications. FAR §9.104(g). Further, all agencies must report awards made to small business to determine whether the agency's small business goals are being met. FAR §19.202-5. Finally, the BOP had to determine [redacted] size regarding the requirement for a subcontracting plan, from which small businesses are exempt. FAR §19.702(b)(1).

[redacted] misrepresentation, like Dismas' concealment of known opposition, was made to gain an unfair competitive advantage. [redacted], like Dismas, should be disqualified for unethical conduct, leaving Bannum as the only responsible offeror capable of submitting a compliant offer. On this basis also, Bannum has a substantial chance of receiving this award. See Alfa Laval, 175 F.3d at p. 1368.

[4] [redacted] small business certification for this procurement was on-line. The BOP did not include a copy of this electronic certification this certification in the AR.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

III. Bannum Has Been the Victim of Improper BOP Retaliation

Defendant seeks to shield the BOP's retaliatory conduct during this procurement under the artificial legal presumption of good faith. However, the BOP's prior and current conduct show that a retaliatory motive has and continues to influence the BOP's treatment of Bannum in this procurement and elsewhere.

The BOP's first attempt to oust Bannum after it filed grievances and protests was through an improper set-aside. The record shows that it was [redacted] revision of its size status, not the interest of two inexperienced small businesses, which caused the BOP to immediately designate the procurement as a set-aside. AR 1390, 1409. Only when Bannum's draft protest exposed [redacted] misrepresentation was the BOP forced to recognize that [redacted] was a large business. To see if it could still support the set-aside (and thus, exclude Bannum), the BOP contacted the two small businesses (but not [redacted] AR 1455-58, 1427. Had Bannum not protested, [redacted] would have been the only offeror. This result is consistent with Bannum's grievance that the BOP had been taking improper actions to favor [redacted] in Bannum's incumbent contract. AR 1184-88.

For presenting violation, Bannum was rewarded with inadequate time to find a facility, which resulted in [redacted]. The BOP's time extensions were not based on Bannum's ineligibility for the 47 days but by the BOP's adamant refusal to extend Bannum's incumbent contract, itself showing an internal pre-award intention not to award Bannum this contract. AR 1490.

The BOP then improperly eliminated Bannum, which action was only withdrawn through a GAO protest. The BOP's "corrective action," to "reinstate" Bannum when a decision had already been made to award to Dismas, was a sham. AR 2400-02.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

Defendant's claims that Bannum's proposal was "fully considered" and that the BOP granted Bannum's request for relief in the protest are meaningless and inaccurate. Bannum asked that a change in facility proposal be considered but had to wait for discussions which the BOP never intended to conduct. AR 431, 434.

Defendant seeks to escape as "irrelevant" (1) the BOP's consideration of Bannum's incumbent performance in spite of BOP promises, and (2) the reckless transfer of the inmates from Bannum's CCC to [redacted] facility that could not handle them, which disrupted the inmates' services and jobs, and violated BOP policy. AR 3039-40. These actions were taken to harm Bannum through the illegal consideration of non-final and inaccurate past performance information in determining best value, and by depriving Bannum of income during the transition and possible protest periods.

Defendant's new excuses regarding the BOP's improper withholding of highly relevant documents at the GAO and in this litigation are unsupported. However, only upon the disclosure of these records did the BOP take "remedial action" in Bannum's first protest in this Court.

The BOP has not changed. It unduly restricted the time to submit responses to discussions, changed deficiencies to clarifications to create the guise of competition, and in spite of statements to this Court in pleadings, chose not to question Dismas and [redacted] on integrity issues and again withheld documents. Unless stopped by the Court, the BOP will continue to take improper actions to harm Bannum for exercising its legal rights.[5]

[5] As stated in our motion for judgment, Bannum has reason to believe that [redacted]. Defendant did not respond to this issue in its motion.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

IV. Bannum Has Met the Standards for Injunctive Relief

Lost profits have been held to satisfy the test for irreparable harm. Hospital Clean of Texas v. United States, 65 Fed. Cl. 618, 624 (2006); Filtration Development CC v. United States, 60 Fed. Cl. 371, 384 (2004); Seattle Security at 571-72. As explained in Norfolk Dredging, Co. Inc. v. United States, 58 Fed. Cl. 167, 184-85 (2003), the patent infringement cases and earlier protest case on which Defendant still relies are distinguishable.

The balance of harms also strongly favors Bannum. If proper discussions were held with reasonable times to respond, Bannum would have a substantial chance to win this contract and the profits to which it is entitled. Even if Dismas is not disqualified, Bannum's compliant FPR [redacted] and an objective SSA would conclude that Bannum's Blue Past Performance rating [redacted], if any. Likewise, even if [redacted] is not disqualified, Bannum's [redacted] AR 428, 4857-63, 5182-87, 5211-12.

Notwithstanding Defendant's vague speculation, there is nothing in the AR to support any harm to the BOP or to any offeror from a reasonable delay to conduct discussions properly. Dismas' claims regarding the "delay in its permanent operations" have no basis. If Dismas is not disqualified, all its potential losses would be compensable under the stop work order and/or the termination clause. [redacted] sister corporation continues to occupy its premises so it will experience no harm. Indeed, [redacted] continues to profit from the wrongful assignment of inmates to its facility in [redacted] that should have been in Bannum's incumbent facility.

**Protected Information to be Disclosed Only in Accordance with the U.S. Federal Court of Claims Protective Order**

The public interest in proper procurements strongly favors Bannum. There is no evidence that the [redacted] CCC is unable to service the area inmates eligible for CCCs. Dismas' concern for the inmates now located in [redacted] ignores the fact that they are likely employed and receive services in or around [redacted]. Once the contract is awarded, the disruption from any transfers will be the same at that time as it is today.

CONCLUSION

The BOP's "remedial action" was designed to create an unfair advantage from the improper award to Dismas to the prejudice to Bannum and [redacted]. The BOP's continuing manipulation of the evaluation and flouting of Defendant's representations to this Court follow a history of improprieties designed to harm Bannum. Injunctive relief directing a reasonable time for discussions and a re-evaluation by independent Department of Justice officials will assure that Bannum receive a fair opportunity to compete for this contract. Bannum respectfully requests that its motion for judgment on the administrative record be granted.

Respectfully submitted,

Michael A. Gordon
s/ Michael A. Gordon
Counsel of Record for Bannum, Inc.
HOLMES & GORDON
17 West Jefferson Street
Rockville, Maryland 20850
(301) 340-1251
(301) 340-1253 (facsimile)

OF COUNSEL:
Fran Baskin, Esquire
HOLMES & GORDON